**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
CRYSTAL ANDERSON,

          Plaintiff,      **COMPLAINT**

    -against-

                   **PLAINTIFF DEMANDS**
NEW YORK CITY ADMINISTRATION FOR   **A TRIAL BY JURY**
CHILDREN'S SERVICES,

         Defendant.

-----------------------------------------------------------X

   Plaintiff CRYSTAL ANDERSON ("Plaintiff"), hereby complains of the Defendant, upon information and belief as follows:

<u>**NATURE OF THE CASE**</u>

1.  Plaintiff brings this action alleging that the Defendant has violated the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq*. ("ADA"), the New York State Human Rights Law, New York State Executive Law §§ 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-107 *et seq*. ("NYCHRL"), and seeks damages to redress the injuries she has suffered as a result of being discriminated and retaliated against, and ultimately terminated by her employer on the basis of her actual and/or perceived disabilities (Post-Traumatic Stress Disorder) and for requesting reasonable accommodations (to interact with clients remotely from the office and avoid field work).

<u>**JURISDICTION, VENUE, PROCEDURAL PREREQUISITES**</u>

2.  Jurisdiction of this Court is proper under 42 U.S.C. §§ 12101 *et seq*., and 28 U.S.C. §§ 1331 and 1343.

3.      The Court has supplemental jurisdiction over Plaintiff's claims brought under state and city law pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

5.      By: (a) timely filing a Charge of Discrimination with the New York State Division of Human Rights and cross-filing, the same, with Equal Employment Opportunity Commission ("EEOC") on May 9, 2022; (b) receiving a Notice of Right to Sue from the EEOC on December 6, 2022; (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC; and (d) contemporaneously with the filing of this Complaint, mailing a copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A; a copy of the transmittal letter to the NYCCHR, *et ano.*, is annexed hereto as Exhibit B.

## PARTIES

6.      At all relevant times, Plaintiff was and is a resident of the State of New York and County of Kings.

7.      At all relevant times, Defendant NEW YORK CITY ADMINISTRATION FOR CHILDREN'S SERVICES ("ACS") is a mayoral agency of the City of New York.

8.      At all times relevant, Plaintiff was an employee of Defendant ACS.

9.      Upon information and belief, Defendant ACS employs 500 or more employees.

## MATERIAL FACTS

10.     On or about August 6, 2018, Plaintiff began working for Defendant ACS as a Child Protective Specialist at ACS' 185 Marcy Avenue, Brooklyn, New York location, earning a salary of approximately $45,000. Plaintiff was granted raises during her employment with Defendant ACS and by 2021, was earning an annual salary of approximately $60,000.

11.     On or about February 2019, while performing a home visit, Plaintiff was held hostage by a client. Plaintiff was able to text her supervisor, Tara Walden ("Walden") to send help, and responders from the New York Police Department and Fire Department of New York arrived at the scene, freed Plaintiff, and removed the client to the hospital via ambulance.

12.     Plaintiff was still being trained for the job at the time of the incident.

13.     The day after the incident, Plaintiff went to work and spoke with Walden about the incident, expressing her fear of returning to field work.

14.     Thereafter, Walden spoke to Deputy Commissioner Shirlene Pratt ("Pratt"), who subsequently granted Plaintiff one week of "desk duty," meaning that Plaintiff did not have to do field casework. Plaintiff was informed by Pratt that nothing more could be done to address Plaintiff's discomfort and fear.

15.     Plaintiff was removed from the client's case after the hostage incident and Child Protective Specialist Erin Munez was assigned to replace her.

16.     When the week's leave ended, Plaintiff again voiced her concern and fear of returning to casework, particularly that which required home visits. Plaintiff was told by Walden and Pratt that there were no further options to address her concerns.

17.     Being unfamiliar with policies in place to address situations like the February 2019 incident, and fearing for her job security, Plaintiff returned to her standard caseload and

job responsibilities, including home visits. Plaintiff continued to suffer from severe anxiety and distress related to her casework and home visits.

18. On or about October 5, 2020, after being threatened by a parent in the course of an assigned case, Plaintiff attempted to commit suicide. That same day, Plaintiff was treated in the Emergency Department.

19. Thereafter, on or about October 15, 2020, realizing the extreme toll that the hostage incident of February 2019 had taken on her health, Plaintiff requested a period of unpaid medical leave from the Office of Human Resources for Defendant ACS.

20. Nearly two weeks later, Plaintiff received an acknowledgment of her request.

21. On October 29, 2020, Plaintiff informed ADA Coordinator Jessica Cooke ("Cooke") from the Office of Equal Employment Opportunity of her request for medical leave. Cooke acknowledged their conversation via email that same day and relayed information about requesting reasonable accommodations upon Plaintiff's return to work.

22. On or about November 4, 2020, Judith Cando ("Cando") of the Office of Human Resources approved Plaintiff's request for leave. Plaintiff's intended return to work date was February 2021.

23. In or around February 2021, due to Plaintiff's continued struggle with diagnosed PTSD (Post-Traumatic Stress Disorder) from the February 2019 hostage incident, her leave was extended to a new return date of June 2021.

24. Cando confirmed Plaintiff's June 2021 return.

25. In or around June 2021, Plaintiff's leave was again extended due to continued symptoms of PTSD, including flashbacks and crying spells.

26. Plaintiff remained in touch with Cando throughout her period of leave.

27. On or about August 2, 2021, Plaintiff was cleared to return to work by her psychiatrist.

28. On or about August 9, 2021, Plaintiff submitted the required documentation to return to work to the Human Resources Department via email.

29. That same day, Plaintiff reached out to Cooke via email to submit a request for reasonable accommodations in anticipation of her return to work.

30. Plaintiff remained apprehensive about home visits despite her readiness to return to work. Plaintiff therefore requested that she be exempt from field work and working closely with families for the time being.

31. Over the next two weeks, Cook communicated with Plaintiff via email and phone call about her request.

32. On or about August 19, 2021, Cooke contacted Plaintiff via email and asked that Plaintiff's doctor be more specific with the kinds of accommodations she would need.

33. On or about August 19, 2021, Plaintiff submitted the requested letter from her doctor to Cooke via email, but did not receive a response. The letter from Plaintiff's doctor specified that Plaintiff was diagnosed with PTSD and the accommodation requested was that Plaintiff be limited to remote client interactions for a period of 12 months

34. Over the next month, Plaintiff continued to contact Cooke via email, inquiring about the accommodations. Plaintiff received no response.

35. On September 24, 2021, Matthew Geraldi ("Geraldi") with the Office of Human Resources contacted Plaintiff via email at 10:48 AM, informing Plaintiff that her return-to-work date was October 4, 2021.

36. Later that afternoon, Plaintiff received a letter via email from Siheem Roseborough with the Office of Human Resources. The notice indicated that if Plaintiff did not contact Human

Resources to be reinstated in her position by October 26, 2021, she could be terminated. However, Plaintiff's return was at this point only being delayed by the lack of response from Cooke regarding her request for accommodations.

37.   Therefore, and because Plaintiff had been in contact with Geraldi with Human Resources, Plaintiff assumed that her reinstatement and request for accommodations were approved and that the letter was null and void.

38.   On October 4, 2021, Plaintiff returned to work and, to her shock and distress, discovered that she had been assigned a case requiring home visits.

39.   Plaintiff called Geraldi, who told her to return home until the Office of Equal Employment Opportunity could find Plaintiff a suitable position.

40.   Plaintiff called Cooke, who repeated the instructions given to her by Geraldi. Cooke further stated that Plaintiff may need to relocate to the Bronx. Plaintiff questioned whether that would be a reasonable accommodation, but Cooke told Plaintiff that there were no other options.

41.   After returning home, Plaintiff emailed Cooke multiple times and left voicemails, to no response.

42.   Plaintiff was able to reach Cooke via phone on or about October 21, 2021. During this call, Cooke informed Plaintiff that her request for accommodations had been denied and that the decision letter with instructions to appeal would be sent to Plaintiff.

43.   When Plaintiff did not receive the decision letter in a timely manner, she continued attempts to contact Cook, to no avail.

44.   On or about November 11, 2021, after not receiving any response from Cooke or any other representative of the Office of Equal Employment Opportunity or Human Resources,

Plaintiff contacted a union delegate from Staten Island named Tara Jones ("Jones").

45.     Plaintiff spoke to Jones via phone and email. Jones informed Plaintiff that Defendant ACS should have completed an incident report at the time of the February 2019 incident due to the involvement of the police. Jones further informed Plaintiff that she should have received an "assault grant" of 18 months' paid time off. Jones recommended that Plaintiff inquire about the grant at this point even though she had already taken unpaid leave.

46.     On or about November 12, 2021, Jones emailed Walden, Plaintiff's former supervisor, who had help free Plaintiff from the hostage incident and was acutely aware of the underlying circumstances, on Plaintiff's behalf and inquired about the incident report, but received no response.

47.     On or about November 12, 2021, Jones also emailed Cooke on Plaintiff's behalf to inquire about the denial of Plaintiff's request for accommodations.

48.     Approximately one hour after after Jones's email to Cooke, Cooke contacted Plaintiff via email with the decision letter regarding Plaintiff's request for accommodations, citing that suitable accommodations could not be identified.

49.     Plaintiff knew of several other people who had received requested accommodations and had not previously known people to have their requests denied.

50.     Plaintiff was aware of at least four other Child Protective Specialists who had physical disabilities that were allowed to work remotely or placed in alternative positions within ACS.

51.     By way of a first example, Plaintiff knew a female Child Protective Specialist who was pregnant and was granted desk duty as an accommodation.

52.     By way of a second example, Plaintiff knew a Child Protective Specialist with asthma who

was granted desk duty as an accommodation.

53.    By way of a third and fourth example, Plaintiff knew two other Child Protective Specialists with physical disabilities who were granted desk duty in the Children's Center and remote work as accommodations, respectively.

54.    Plaintiff was given fifteen (15) business days to file an appeal of the denial.

55.    Approximately ten (10) days after Plaintiff received the decision letter from Cooke, Plaintiff's employment was terminated in writing by the Office of Human Resources. Plaintiff understood this termination to be in retaliation to her request for accommodations and inquiry about the February 2019 hostage incident via Jones.

56.    Plaintiff understood that the denial of her request for reasonable accommodations and termination had resulted from discrimination due to her disability and to be retaliatory in nature because Plaintiff's attempts to secure an accommodation revealed a failure on the part of ACS leadership to properly document and address the February 2019 hostage incident.

57.    **Plaintiff was terminated due to her actual and/or perceived disabilities and for requesting accommodations because of her disabilities.**

58.    **Plaintiff was discriminated against by Defendants due to her disability.**

59.    Plaintiff felt offended, disturbed, and humiliated by the blatantly unlawful and discriminatory termination.

60.    Defendant ACS's actions and conduct were intentional and aimed at harming Plaintiff.

61.    Defendant knowingly and willingly refused to provide Plaintiff with a reasonable accommodation for her disabilities, in violation of the ADA.

62.    Plaintiff suffered an adverse employment action because of her actual and/or perceived

disabilities.

63.    But for Plaintiff's disabilities and for requesting an accommodation, she would not have been subjected to an adverse employment action at the hands of Defendant ACS.

64.    As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, benefits, and other compensation, which such employment entails.

65.    Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional distress.

66.    As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of the Court.

67.    Defendant ACS is subject to the ADA.

68.    At all relevant times, Plaintiff was an individual with one or more disabilities within the meaning of the ADA (Post-Traumatic Stress Disorder).

69.    Defendant ACS perceived Plaintiff to be disabled.

70.    At all relevant times, Plaintiff was and is a qualified individual who can perform the essential functions of her employment with or without a reasonable accommodation as defined by § 12111(8) of the ADA.

71.    At all times relevant, Plaintiff's disabilities were mental impairments which substantially limit one or more major life activities within the meaning of § 12102(1)(A) of the ADA, including, but not limited to thinking and concentrating.

72.    The above are just some of the ways Defendant ACS discriminated and retaliated against Plaintiff while employing her.

73. Defendant ACS's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

74. As such, Plaintiff demands punitive damages against Defendant ACS.

## AS A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER THE ADA

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

76. Plaintiff claims Defendant violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336), as amended, as these titles appear in volume 42 of the United States Code, beginning at Section 12101.

77. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112 "Discrimination" states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

78. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her actual and/or perceived disabilities (Post-Traumatic Stress Disorder).

## AS A SECOND CAUSE OF ACTION
## RETALIATION UNDER THE ADA

79. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

80. The ADA prohibits retaliation, interference, coercion, or intimidation.

81. 42 U.S.C. § 12203 provides:

1.   Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

2.   Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

82.   Defendant ACS violated this section as set forth herein.

## AS A THIRD CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYSHRL

83.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

84.   The New York State Executive Law § 296(1)(a) provides that,

It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, **disability**, predisposing genetic characteristics, marital status or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

85.   Defendant ACS engaged in unlawful discriminatory practices in violation of the New York State Executive Law § 296(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her actual and/or perceived disabilities.

## AS A FOURTH CAUSE OF ACTION
## RETALIATION UNDER THE NYSHRL

86.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

87.     New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

88.     Defendant ACS violated this section as set forth herein.

**AS A FIFTH CAUSE OF ACTION**
**DISCRIMINATION UNDER THE NYCHRL**

89.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

90.     The Administrative Code of City of NY § 8-107 [1] provides that,

>       It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, **disability**, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

91.     Defendant ACS violated this section as set forth herein.

**AS A SIXTH CAUSE OF ACTION**
**FOR RETALIATION UNDER THE NYCHRL**

92.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

93.     The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has requested a reasonable accommodation under this chapter under this chapter. . ."

94.     Defendant ACS violated this section as set forth herein.

## **JURY DEMAND**

95.     Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant ADMINISTRATION:

A.      Declaring that Defendant ACS engaged in unlawful employment practices prohibited by the ADA, the NYSHRL, and the NYCHRL, by discriminating and retaliating against Plaintiff on the basis of her actual and or perceived disabilities and for terminating her for requesting an accommodation.

B.      Awarding damages to the Plaintiff, retroactive to the date of her discharge for all lost wages and benefits resulting from Defendant ACS unlawful termination of her employment and to otherwise make her whole for any losses suffered as a result of such unlawful employment practice;

C.      Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D.      Awarding Plaintiff punitive damages;

E.      Awarding Plaintiff attorneys' fees, costs, interests, and expenses incurred in the prosecution of the action;

F.    Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy Defendant ACS's unlawful employment practices.

Dated:    New York, New York
          December 19, 2022


                                        **PHILLIPS & ASSOCIATES,**
                                        **ATTORNEYS AT LAW, PLLC**

                        By:     _____
                                Brittany A. Stevens, Esq.
                                *Attorneys for Plaintiff*
                                45 Broadway, Suite 430
                                New York, New York 10006
                                T: (212) 248-7431
                                F: (212) 901-2107
                                bstevens@tpglaws.com